IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

MEDFORD DIVISION

SUSAN PETERSON,

        Plaintiff,

v.

ERIC SHINSEKI, SECRETARY,
VETERANS AFFAIRS, and the
UNITED STATES,

        Defendants.

Civ. No. 11-cv-03120-CL

REPORT & RECOMMENDATION

CLARKE, Magistrate Judge.

Plaintiff Susan Peterson ("plaintiff") brings this action against defendant Eric Shinseki, Secretary of the United States Department of Veterans Affairs, in his official capacity, and the United States (collectively "the government"), alleging unlawful detention and false imprisonment. Before the court is the government's motion to dismiss, and in the alternative, motion for summary judgment (#19). For the reasons stated below, the court recommends that the government's motion be denied.

## PRELIMINARY PROCEDURAL MATTER

As an initial matter, the court must address the admissibility of the evidence offered by plaintiff in opposition to the government's motion. The government objects to two exhibits offered by plaintiff: (1) a report from plaintiff's visit with her doctor, dated May 20, 2009 (#27-

3), and (2) a declaration by Department of Veterans Affairs Southern Oregon Rehabilitation Center and Clinics ("SORCC VA") employee Jessica Shannon (#28).

## I.    Doctor's Report.

The government moves to strike a report from plaintiff's visit with her doctor on the grounds that the document is not properly authenticated. A trial court may only consider admissible evidence in ruling on a motion for summary judgment. *See* FED. R. CIV. P. 56(e). A document may be authenticated by the testimony of a witness with knowledge that an item is what it is claimed to be. FED.R.EVID. 901(a)(1).

Here, plaintiff submitted a declaration by her counsel testifying that the document is a true and correct copy of a report from plaintiff's doctor. Frannell Decl, ¶ 2. Though the court does not rely on the doctor's report for the issues addressed in the government's dispositive motions, the court finds that the report was properly authenticated by plaintiff's counsel's declaration. Accordingly, the government's motion to strike the report is denied.

## II.    Declaration of Jessica Shannon.

The government also argues that a declaration by SORCC employee Jessica Shannon should be stricken because it contains "subjective conclusory observations unsupported by underlying facts." Def. Reply, p. 2. The government contends that Shannon's statement that she "was informed" that the urinalysis test plaintiff performed was a reasonable suspicion test is a conclusory observation because Shannon does not indicate who told her this. The government also states that Shannon's statement that she "observed" plaintiff as plaintiff performed the urinalysis test should be stricken because it is a conclusory observation contradicted by evidence presented by the government. Finally, the government objects to Shannon's statement that she "was under the impression" that plaintiff was being forced to submit to a test.

While Shannon's statement does not specify who told her that the urinalysis test was a reasonable suspicion test, the statement is not a subjective conclusory observation. Likewise, the fact that the government has produced evidence that may contradict Shannon's statement does not make Shannon's statement a subjective conclusory observation; rather, it establishes an issue of fact. Finally, Shannon's statement that she was "under the impression" that plaintiff was being forced to submit to a test is admissible lay opinion testimony. Lay witnesses may express opinions based on matters they have personally observed if the opinion would be helpful to the fact finder and is not based on any specialized knowledge. FED. R. EVID. 801. In this case, Shannon observed plaintiff's behavior, and saw that plaintiff was being escorted by Officer Petery to the lab. Shannon's opinion was based on a matter she had personally observed, was not based on specialized knowledge, and may be helpful in establishing whether plaintiff's urinalysis test was voluntary. Accordingly, the declaration of Jessica Shannon is admissible, and the government's motion to strike the declaration is denied.

## LEGAL STANDARDS

### I. Motion to dismiss.

The federal courts are courts of limited jurisdiction. *See, e.g.,* Exxon Mobil Corp. v. Allapattah Servs., 545 U.S. 546, 552 (2005) (*citing* Kokkonen v. Guardian Life Ins. Co. of Am., 511 U.S. 375, 377 (1994)). Therefore, the presumption is against jurisdiction and "the burden of establishing the contrary rests upon the party asserting jurisdiction." Vacek v. U.S. Postal Serv., 447 F.3d 1248, 1250 (9th Cir. 2006) (*quoting* Kokkonen, 511 U.S. at 377). "A Rule 12(b)(1) jurisdictional attack may be either facial or factual." Safe Air v. Meyer, 373 F.3d 1035, 1039 (9th Cir. 2004) (*citing* White v. Lee, 227 F.3d 1214, 1242 (9th Cir. 2000)). "In a facial attack, the challenger asserts that the allegations contained in a complaint are insufficient on their face

to invoke federal jurisdiction." Id. By contrast, a factual attack "disputes the truth of the allegations that, by themselves, would otherwise invoke federal jurisdiction." Id.

In this case, the government makes a facial attack on the court's jurisdiction over the claims of false imprisonment and unlawful detention against non-law enforcement federal employees. Def. Memo, p. 3. In a facial attack, the factual allegations of the complaint are presumed to be true and conflicts in the pleadings are resolved in the plaintiff's favor. Doe v. Holy See, 557 F.3d 1066, 1073 (9th Cir. 2009) (*internal citations omitted*); Rio Props., Inc. v. Rio Int'l Interlink, 284 F.3d 1007, 1019 (9th Cir. 2002). The court need merely to look at the complaint to determine whether the plaintiff has sufficiently alleged a basis of subject matter jurisdiction. To survive such a motion, the plaintiff need only make a *prima facie* showing of jurisdiction. Rio Props., Inc., 284 F.3d at 1019.

## II.   Summary Judgment.

The court must grant summary judgment if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56(c). An issue is "genuine" if a reasonable jury could return a verdict in favor of the non-moving party. Rivera v. Philip Morris, Inc., 395 F.3d 1142, 1146 (9th Cir. 2005) (*citing* Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986)). A fact is "material" if it could affect the outcome of the case. Id. The court views the evidence in the light most favorable to the non-moving party and draws "all justifiable inferences" in that party's favor. Miller v. Glenn Miller Prods., Inc., 454 F.3d 975, 988 (9th Cir. 2006) (*quoting* Hunt v. Cromartie, 526 U.S. 541, 552 (1999)). When the moving party has met its burden, the non-moving party must present "specific facts showing that there is a genuine issue for trial." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587, (1986) (*quoting* FED. R. CIV. P. 56(e)). Conclusory allegations, unsupported by factual material,

are insufficient to defeat a motion for summary judgment. Taylor v. List, 880 F.2d 1040, 1045 (9th Cir. 1989).

## FEDERAL TORTS CLAIM ACT

The Federal Torts Claim Act ("FTCA") "provides a limited waiver of the sovereign immunity of the United States for torts committed by federal employees acting within the scope of their employment." Nurse v. U.S., 226 F.3d 996, 1000 (9th Cir. 2000). Under the FTCA, the United States may be held civilly liable for the torts of its employees "in the same manner and to the same extent as a private individual under like circumstances." 28 U.S.C. § 2674.

The FTCA's waiver of sovereign immunity is limited by multiple statutory exceptions. 28 U.S.C. § 2680. If a cause of action falls within one of these exceptions, then the court may not hear the claim. One exception is for intentional tort claims brought against federal employees. However, while the government generally retains sovereign immunity over intentional tort claims brought against federal employees, the FTCA makes an "exception to the exception" for intentional tort claims brought against federal law enforcement officers. The FTCA provides that "with regard to acts or omissions of investigative or law enforcement officers of the United States Government, the provisions of [the FTCA] shall apply to any claims arising out of assault, battery, false imprisonment, false arrest, abuse of process, or malicious prosecution." 28 U.S.C. § 2680(h). That is, claims for certain intentional torts, including false imprisonment, may be brought under the FTCA against federal law enforcement officers, but may not be brought under FTCA against non-law enforcement federal employees.

## FALSE IMPRISONMENT

Under the FTCA, liability for false imprisonment is determined by the tort law of the state where the claim arose. 28 U.S.C. § 1346(b). In Oregon, false imprisonment occurs when

there is an unlawful restraint of one's freedom of movement. Lukas v. J.C. Penney Co., 233 Or. 345, 353 (1963). The restraint need not be by violence or force, or even touch the body of the imprisoned person. Christ v. McDonald, 152 Or. 494, 501 (1935). Rather, "[f]alse imprisonment consists in the unlawful restraint against his will of an individual's personal liberty or freedom of locomotion." Id. Restraint need not be for more than a brief period of time. Lukas, 233 Or. at 353 (1963).

To establish a claim for false imprisonment, "(1) [the] defendant must confine [plaintiff]; (2) [the] defendant must intend that the act causes the confinement; (3) [the] plaintiff must be aware of the confinement; and [4] the confinement must be unlawful." Hiber v. Creditors Collection Serv., 154 Or.App. 408, 413 (1998). Pursuant to the Fourth Amendment, when law enforcement officers detain a person but stop short of making an arrest, the officers must act reasonably in light of all the circumstances. Terry v. Ohio, 392 U.S. 1, 19 (1968).

## FACTUAL BACKGROUND

The following facts are viewed in a light most favorable to plaintiff:

Plaintiff was employed as a Patient Services Representative in the Release of Information ("ROI") Office at the SORCC VA in White City, Oregon. Plaintiff worked at this position from 2004 to 2011. At the time in question, plaintiff had a long plaster cast on her left arm, was taking Percocet for pain, and was taking Ritalin for ADHD.

Plaintiff alleges that around 4:30 PM on October 23, 2008, an outpatient clerk at SORCC called the VA police dispatch line and stated that she believed that plaintiff might be under the influence of methamphetamine. The investigating officer, Robert Petery, asked the outpatient clerk to contact plaintiff's supervisor, Sandra Kindsvater, and requested that Kindsvater meet Officer Petery in plaintiff's office. Around 4:36 PM, Officer Petery, Kindsvater, and plaintiff's

second line supervisor, Keith Welsh, entered plaintiff's office without advance notice and blocked the open doorway between plaintiff's office and the hall. Officer Petery told plaintiff to stand up, and then shined a light in plaintiff's eyes as part of a field sobriety test. Plaintiff, who is prone to migraines from bright lights, turned her head away from the light. Officer Petery, Kindsvater, and Welsh scoffed at plaintiff. Plaintiff asked what was going on, and stated that she had to pick her son up from drama rehearsal at his high school at 5:00 PM and that the test could make her late to do so. Neither Kindsvater, Welsh, nor Officer Petery responded. Because the office door was open during the field sobriety test, others could see into the office, and a crowd gathered near the door. Plaintiff was upset that she had been described as being under the influence of drugs, and told Officer Petery that she was taking prescribed Percocet and Ritalin, but nothing else. After finishing the field sobriety test, Officer Petery announced that he found no symptoms of plaintiff being under the influence of drugs or alcohol.

After the field sobriety test, plaintiff was told that she needed to perform a urinalysis test. Plaintiff was escorted to the SORCC VA drug testing facility by Officer Petery. Plaintiff took the test in front of lab employee Jessica Shannon, which was difficult due to her left arm being in a cast, and caused plaintiff to urinate on her cast. Plaintiff finished the urinalysis test around 5:00 PM, causing her to be late picking up her son. Plaintiff alleges that she developed Post-Traumatic Stress Disorder ("PTSD") from the event and was unable for work for a period thereafter.

## DISCUSSION

### I. Motion to Dismiss.

The government argues that plaintiff's claims against Kindsvater, who is not a named defendant, should be dismissed for lack of subject matter jurisdiction. The government contends

that as a non-law enforcement federal employee, Kindsvater is immune from intentional tort claims brought under the FTCA.

Because the government facially attacks the court's subject matter jurisdiction, the factual allegations of the complaint are presumed true, and reasonable inferences are drawn in plaintiff's favor. Doe, 557 F.3d at 1073. Plaintiff's complaint states, "[t]his is an action to correct unlawful abuse of power when the [VA], using their authority as an employer, without cause had me detained by the VAPD and escorted by an officer to a drug testing facility where I was forced to urinate in a cup for the purposes of a drug test." Compl., p. 2. Examining the complaint in the light most favorable to plaintiff, Kindsvater acted with law enforcement to detain plaintiff during the field sobriety and urinalysis tests. Accordingly, the FTCA's waiver of sovereign immunity for intentional torts committed by federal law enforcement applies to Kindsvater's actions. The court recommends that the government's motion to dismiss be denied.

## II. Motion for Summary Judgment.

### A. Field Sobriety Test.

Plaintiff first argues that she was falsely imprisoned during the field sobriety test. To establish a claim for false imprisonment, "(1) [the] defendant must confine [plaintiff]; (2) [the] defendant must intend that the act causes the confinement; (3) [the] plaintiff must be aware of the confinement; and [4] the confinement must be unlawful." Hiber, 154 Or.App. at 413. The government admits to confining plaintiff for the purposes of the field sobriety test, Def. Reply, p. 11, meeting the first three elements of a false imprisonment claim, but denies that the confinement was unlawful. A law enforcement officer detains a person if they restrain the person's freedom of movement in such a way that a reasonable person would believe he was not free to leave. Desyllas v. Bernstine, 351 F.3d 934, 940 (9th Cir. 2003). The detention is

unlawful if the law enforcement officer's conduct was not reasonable in light of all the circumstances. Terry v. Ohio, 392 U.S. 1, 19 (1968). Whether a law enforcement officer's conduct was reasonable in light of all the circumstances requires balancing the need to detain a person against that person's interest in maintaining liberty and privacy. Terry, 392 U.S. at 19.

Viewing the evidence in the light most favorable to plaintiff, a question of material fact exists as to whether plaintiff's confinement during the field sobriety test was lawful. While it is undisputed that Officer Petery had a reasonable suspicion to perform a field sobriety test, the overall circumstances create an issue of fact as to whether plaintiff was lawfully detained. Plaintiff contends that no one gave her advance warning of the field sobriety test, answered her questions about the test, responded to concerns about her son, or offered to perform the test privately. Because a question of fact exists as to whether the test's circumstances were reasonable, the court recommends that the government's motion for summary judgment as to the field sobriety test be denied.

### B. Urinalysis Test.

Plaintiff also contends that she was unreasonably detained by the government during the urinalysis test. The government argues that plaintiff was not confined because she took the urinalysis test voluntarily. The government further contends that if plaintiff felt that she was being forced to take the urinalysis test, this feeling was not reasonable under the circumstances.

Viewing the evidence in the light most favorable to plaintiff, a question of fact exists as to whether plaintiff was falsely imprisoned during the urinalysis test. Plaintiff contends that she was explicitly told that she had to take a urinalysis test, and did not volunteer to do so. The government argues that Officer Petery told plaintiff that the field sobriety test indicated that she was clean, but plaintiff still insisted on the urinalysis test. Plaintiff further argues that she would

not have volunteered to take the urinalysis test because doing so would make her late to pick up her son. The government argues that because the urinalysis test occurred at 5:00 PM, and the high school plaintiff's son attends is nearby, plaintiff could easily have done both. Further, Shannon states that she was informed that the test was a "reasonable suspicion" test, rather than a voluntary test, while the government argues that the chain of custody filled out by Shannon has a check box titled "reasonable suspicion," which was not checked by Shannon. A substantial number of factual disputes exist regarding plaintiff's urinalysis test. Accordingly, the court finds that there is a question of material fact as to whether plaintiff was forced to take a urinalysis test, and recommends that the government's motion for summary judgment on this point be denied.

## RECOMMENDATION

For the reasons stated above, the court recommends that the government' motion to dismiss, and in the alternative, motion for summary judgment (#19), be DENIED.

This recommendation is not an order that is immediately appealable to the Ninth Circuit Court of Appeals. Any notice of appeal pursuant to Federal Rule of Appellate Procedure Rule 4(a)(1) should not be filed until entry of the district court's judgment or appealable order.

The Report and Recommendation will be referred to a district judge. Objections to this Report and Recommendation, if any, are due fourteen (14) days from today's date. If objections are filed, any response to the objections is due fourteen (14) days from the date of the objections. *See* FED. R. CIV. P. 72, 6.

DATED this 27 day of November, 2012.

MARK D. CLARKE
United States Magistrate Judge